UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JOHNNY L. BUXTON, JR.                                                                   PLAINTIFF

VERSUS                                                               CIVIL ACTION NO. 2:21-CV-1-TBM-RPM

COMMISSIONER OF SOCIAL SECURITY                                DEFENDANT

## REPORT AND RECOMMENDATIONS

This matter is before the undersigned on Plaintiff Johnny L. Buxton, Jr.'s appeal from the Commissioner of Social Security's decision denying his claim for disability benefits under the Social Security Act (the Act). Buxton was 36 years old at the time he filed for disability, with a 9th grade education, and prior work experience as a construction worker and truck driver. Doc. [15] at 32, 39, 124-25. In his application for disability benefits, filed on April 2, 2018, he alleged an onset of disability beginning March 28, 2018, due to a motor vehicle accident that resulted in a left leg amputation above the knee. *Id.* at 112, 261, 295-312. His application was denied initially and on reconsideration. *Id.* at 159-73, 176-201. Buxton requested and was granted a hearing before an Administrative Law Judge (ALJ). *Id.* at 74-156, 234-38.

On June 10, 2020, the ALJ issued a decision finding Buxton not disabled. *Id.* at 27-41. The ALJ found that Buxton met the insured status requirements of the Act through March 31, 2021, and that he had not engaged in substantial gainful activity since March 28, 2018. *Id.* at 29. The ALJ further found that Buxton suffered from the severe impairments of above-the-knee amputation and other fracture residuals; however, Buxton did not meet the requirements for any of the listings in effect at that time. *Id.* at 29-31. In particular, the ALJ considered whether Buxton met the requirements for Listing 1.05, which relates to amputations of lower extremities. Despite Buxton's impairments, the ALJ concluded that he maintains the residual functional

capacity (RFC) to perform sedentary work except that he is limited to standing and/or walking no more than one-and-a-half hours in an eight-hour workday; he should never climb or crawl; and he should only occasionally stoop, kneel, crouch, or balance. *Id.* at 32-39. The ALJ found that Buxton cannot perform his past relevant work; however, relying on the testimony of a vocational expert, she concluded that Buxton could perform other jobs that exist in significant numbers in the national economy. *Id.* at 39-40. Thus, the ALJ concluded that Buxton is not disabled under the Act. *Id.* at 41. The Appeals Council denied Buxton's request for review. *Id.* at 11-18. He then filed the instant complaint in federal court.

Buxton has filed a memorandum brief in support of his complaint and argues (1) he has not been involved in substantial gainful activity since his injury on March 28, 2018; (2) he has suffered continuously from these injuries since March 28, 2018; (3) he suffers from severe impairments of amputation, polytrauma, leucocytosis, anemia, fractures all across body (including back and neck), skin integrity issues, pancreatic contusion, lacerations of the skin and more; (4) he can no longer perform his past work; (5) he cannot perform similar jobs; and (6) the Court should remand this matter for additional consultative examinations because the medical records are insufficient. Doc. [23]. After initial briefing concluded, the undersigned directed the parties to file additional briefing on issues related to the listings. Doc. [25].

## Law and Analysis

### Standard of Review

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the

Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from

performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy.  The burden then shifts back to the claimant to establish that he cannot perform this alternative employment.  *Id.*

**(1) Substantial Gainful Activity**

Buxton first argues that he has not been involved in substantial gainful activity since his injury of March 28, 2018.  This finding is not in dispute.  The ALJ found that Buxton had not been involved in substantial gainful activity since March 28, 2018.  Doc. [15] at 29.

**(2) Continuous Injury**

Buxton next argues that he has continuously suffered from his injuries since the onset date.  This finding also is not in dispute.  The ALJ found that Buxton's above-the-knee amputation and fracture residuals were severe impairments, which resulted in an RFC of sedentary work with additional limitations.  Doc. [15] at 29.  By implication, the ALJ found that Buxton suffered from these severe impairments from March 28, 2018, through the last date of insured (March 31, 2021).  *Id.* at 27, 29.  The ALJ did not reject Buxton's disability claims based on the severe impairments lasting less than 12 months.  Rather, the ALJ found that despite the impairments and resulting limitations, Buxton retained the ability to perform other work.

Buxton further argues that the ALJ "erroneously granted weight" to medical reports that stated he was healing nicely.  The ALJ merely re-stated what was in the medical evidence.  Doc.

[15] at 34-35. There is nothing to suggest that the ALJ mischaracterized the record when she identified medical evidence stating that Buxton's injuries were healing. In reviewing the record, the ALJ appropriately carried out her role of interpreting and weighing the relevant medical evidence. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir.2005) ("Conflicts of evidence are for the Commissioner ... to resolve."). The ALJ's act of "granting weight" to medical evidence is not an error but rather an integral function of the ALJ's duties.

   **(3) Severe Impairments**

Buxton argues that he suffered from a variety of severe impairments resulting from the motor vehicle accident. He does not point to any specific impairment, but instead argues that the ALJ incorrectly concluded that his disorders failed to meet the requirements of Listings 1.22, 1.20, 1.18, and/or 1.15. The Commissioner argues, without elaboration, that the listings identified in Buxton's memorandum brief, Listings 1.22, 1.20, 1.18, and 1.15, are not found in the Code of Federal Regulations. Doc. [24] at 7. Buxton did not file a reply brief and did not dispute the Commissioner's characterization. Seeking greater clarification, the undersigned directed the parties to file supplemental briefs addressing whether the listings cited by Buxton in his memorandum brief were in effect at the time of the ALJ's decision; and if so, directing the parties to enumerate and explain the criteria needed to satisfy the requirements for Listings 1.22, 1.21, 1.18, and 1.15, along with citations to medical evidence in support of each criterion. Doc. [25]. In response to the show cause order, Buxton conceded that the listings cited in his opening memorandum brief were not in effect at the time of the ALJ decision. Doc. [26]. Nevertheless, Buxton proceeded to argue for the first time that the ALJ should have found severe impairments

under other similar listings that were in effect at the time of the ALJ's decision (Listings 1.06, 1.05(b), 1.02, and 1.04).

The new listing of impairments for musculoskeletal disorders went into effect on April 2, 2021. *See Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164 (Dec. 3, 2020). In the instant case, the ALJ issued her decision on June 10, 2020. Thus, the arguments in Buxton's opening brief relate to listings that were not in effect at the time of the ALJ's decision. As such, Buxton's arguments in the opening brief are without merit. *See Baker v. Kijikazi*, No. 6:20-cv-00946-AKK, 2022 WL 617264, at *4 (N.D.Ala. March 2, 2022) (finding that listing 1.15 did not apply to claimant's case because the ALJ decision issued before the new listings took effect); *Lopez v. Comm'r of Soc. Sec.*, No. 6:20-cv-1118-GKS-GJK, 2021 WL 8017824, at *4 (M.D.Fla. Oct. 22, 2021) (claimant's arguments were "legally and factually frivolous" because they related to listings not yet in effect); *see also Jason J. v. Kijikazi*, No. 3:20-cv-50162, 2022 WL 345092, at *2 n.3 (N.D.Ill. Feb. 4, 2022) (noting that Listing 1.02 was removed and replaced by Listing 1.18 effective April 2, 2021); *Terrence L. v. Kijikazi*, No. 1:21-738-TLW-SVH, 2022 WL 891730, at 16 n.8 (D.S.C. Jan. 20, 2022) (identifying Listings 1.15 and 1.18 as new listings effective April 2, 2021). Because the new listings related to musculoskeletal disorders that were not in effect at the time of the ALJ decision, the ALJ could not have erred in failing to address them.

The undersigned further finds that the ALJ did not err in concluding that Buxton did not meet any of the other relevant listings. The claimant has the burden of proving that his impairment or combination of impairments meets or medically equals one of the listings. *Selders*, 914 F.2d at 619. To meet a listed impairment, the claimant's medical findings, *i.e.*, symptoms, signs, and laboratory findings, must match all those described in the listing for that

impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (emphasis in the original). The criteria in the listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

The ALJ found that Buxton suffers from severe impairments of above-the-knee amputation and other fracture residuals. Doc. [15] at 31-32. However, the ALJ determined that Buxton's conditions did not meet or equal any of the listed impairments. The ALJ specifically addressed Listing 1.05(b), which requires amputation of one or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, which have lasted or are expected to last for at least 12 months. *Id.* at 32; 20 C.F.R. Part 404, Subpart P, App. 1, § 1.05(b). In his response to show cause, Buxton argues that he meets Listing 1.05(b), because he underwent emergency "above the knee" amputation of his left leg and he is not able to ambulate effectively.

Although Buxton argues that he had difficulties with his prosthetic device, substantial evidence supports the ALJ's finding that Buxton did not demonstrate the existence of stump complications resulting in medical inability to use a prosthetic device to ambulate effectively. As noted by the ALJ, Buxton was fitted for a prosthesis on September 14, 2018. Doc. [15] at 36. The medical records also indicated that the prosthesis fit good, required some minor adjustments, but that Buxton consistently was doing well with the prosthetic device over time. Doc. [22] at 422-31. Although Buxton requested periodic adjustments to the prosthesis, he reported on November 20, 2019, that he has been walking on un-level surfaces and over hills more often. *Id.* at 431. Buxton testified at the ALJ hearing that he can rise and stand without assistance using

the prosthesis. Doc. [15] at 118. When standing, the prosthesis on his left leg did not hurt, rather his unamputated right leg hurts so that he could stand for only five minutes. *Id.* at 115. He also testified that the prosthesis on his amputated left leg is helpful, but his right leg gives him more trouble. *Id.* at 83, 115. Buxton's son testified that Buxton could move around on his prosthetic leg, but he can only walk 15 or 20 yards. *Id.* at 144-45. Buxton's fiancé testified that Buxton could walk using his prosthesis; however, his non-amputated leg would start to bother him. *Id.* at 153. According to her, Buxton broke the prosthesis about five or six months prior to the hearing and could not use it anymore. *Ibid.* The ALJ also relied on medical opinion evidence from two State agency medical consultants indicating that Buxton would be able to stand/walk up to 1.5 hours in an 8-hour workday.[1] Doc. [15] at 38, 162, 170, 184. The ALJ included this standing/walking limitation in Buxton's RFC. *Id.* at 32.

      Buxton does not cite to any medical evidence specifically regarding his purported inability to ambulate effectively. Although there is hearing testimony suggesting that Buxton experienced problems ambulating, a claimant must provide medical findings that support each of the criteria for the equivalent impairment determination and may not establish listings level severity through subjective testimony alone. *See Sullivan*, 493 U.S. at 530; *Selders*, 914 at 619; *Lewis v. Barnhart*, 431 F.Supp.2d 657, 661 (E.D.Tex. 2006). This Court will not re-weigh the evidence or judge the credibility of witness testimony, which is a role reserved for the Commissioner. *Taylor*, 706 F.3d at 603; *Perez*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The ALJ's rejection of Listing 1.05(b) is supported by substantial evidence and therefore should be upheld. *See Selders*, 914 F.2d at 619-20.

---

[1] These agency physician opinions pre-dated Buxton's fitting for a prosthetic device; however, Dr. Bass specifically considered the need for a prosthetic device when evaluating Buxton's RFC and ability to stand/walk. *See* Doc. [15] at 185.

With respect to the other listings cited by Buxton in his response to show cause order (Listings 1.06, 1.02, 1.04), the ALJ did not address them specifically in her decision. Nevertheless, Buxton does not point to medical evidence to demonstrate how his impairment satisfies each and every criterion. As such, he fails to meet his burden. *See Aydon v. Comm'r of Soc. Sec.*, No. 6:21-cv-01161, 2022 WL 486285, at *7 (W.D.La. Feb. 1, 2022). Listings 1.06 and 1.02A both include as a criterion the inability to ambulate effectively. As explained above, the ALJ found that Buxton was able to ambulate effectively with the use of a prosthetic device. Also as explained above, the ALJ's finding is supported by substantial evidence in the record. Listing 1.02B includes as a requirement the inability to perform fine and gross motor movements effectively. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02. To the extent Buxton seeks application of Listing 1.02B, he has failed to cite to medical evidence demonstrating such inability. He cites to medical records from examinations conducted by medical providers within two months of the motor vehicle accident that resulted in polytrauma, multiple fractures, and an above-the-knee amputation. *See* Doc. [15] at 964, 991. Although the medical record does mention range-of-motion issues in Buxton's upper extremities, there is no indication that he is incapable of performing fine and gross movements effectively, as required by Listing 1.02B. Listing 1.04 relates to disorders of the spine. Buxton generally cites to medical evidence indicating that he sustained injuries to the spine from the motor vehicle accident, but he does not explain how the medical evidence demonstrates that he met the other requirements for Listing 1.04; namely compromise of a nerve root including the cauda equina or the spinal cord with (A) evidence of nerve root compression or (B) spinal arachnoiditis or (C) lumbar spinal stenosis. *See* Doc. [6] at 6 (citing Doc. [15] at 387, 396, 405, 620, 638-39). Based on the foregoing, Buxton

failed to meet his burden with regard to any of the listings. Thus, the ALJ did not err in failing to explicitly consider Listings 1.06, 1.04, and 1.02.

**(4) Past Relevant Work**

Buxton argues that he cannot perform his past relevant work. Again, this is not in dispute. The ALJ specifically found that Buxton cannot perform his past relevant work. Doc. [15] at 39.

**(5) Other Work**

Buxton argues that he cannot perform any other work. More specifically, he argues that he "cannot perform any similar work to that of his previous work." Doc. [23] at 25. First, Buxton has misstated the relevant inquiry at step five. The relevant inquiry is not whether Buxton can perform similar work to that of his previous work, but whether he can perform other jobs that exist in significant numbers in the national economy. *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). The ALJ presented the vocational expert with a hypothetical encompassing the limitations outlined in Buxton's RFC. Doc. [15] at 91-96. The vocational expert testified that, given the limitations in the RFC, Buxton could perform other jobs that exist in significant numbers in the national economy. The vocational expert's opinion constitutes substantial evidence to support the ALJ's conclusion that Buxton is not disabled. *See Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). Buxton points out that the vocational expert also indicated that no competitive jobs would exist if Buxton required regular breaks or was able to sit for no longer than three hours. Doc. [15] at 93-95. These limitations were not included in the ALJ's RFC determination, and therefore did not need to be included in the hypothetical presented to the vocational expert. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (ALJ

is required to include only the limitations that ALJ recognizes in the hypothetical). In essence, Buxton is simply disagreeing with the ALJ's RFC determination.

Buxton only attacks the basis of the ALJ's RFC with respect to stooping, kneeling, crouching, or balancing. As part of the RFC determination, the ALJ found that he is capable of stooping, kneeling, crouching, or balancing occasionally. Doc. [15] at 32. Thomas Jeffcoat, M.D. opined that Buxton should only occasionally stoop, kneel, crouch, or climb ramps or stairs and had no limits on balancing. *Id.* at 162. Reginald Bass, M.D. concurred with Dr. Jeffcoat's opinion. *Id.* at 185. The ALJ explicitly relied on these medical opinions in crafting the RFC. *Id.* at 38. Accordingly, the ALJ's conclusion is supported by substantial evidence.

### (6) Additional Consultative Examinations

Buxton argues that the ALJ failed to fully develop the record. He argues that "while the medical records are voluminous, they are incomplete due to [Buxton's] inability to continue to attend his doctor's appointments." Doc. [23] at 26. Buxton asserts that he stopped going to the doctor due to financial hardship. *Id.* at 27. He contends that if the ALJ had ordered a consultative medical examination closer to the time of the ALJ hearing, then the resulting decision likely would have been different. *Id.* at 26-27.

The decision whether to order a consultative examination is within the discretion of the ALJ. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). An ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it. *See Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) ("A consultative examination is required ... only if 'the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision.'" (quoting *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987))). An ALJ must fully and fairly develop the facts relative to a claim for disability benefits. *Ripley v. Chater*,

67 F.3d 552, 557 (5th Cir. 1995). Reversal is appropriate only if the applicant shows that he was prejudiced. *Id.* Prejudice can be established by showing that had the ALJ adequately performed his duty, he "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir.1984). Other than mere speculation, Buxton has not presented any argument or evidence to suggest that a consultative examination would have led to a different result. Thus, Buxton has failed to demonstrate prejudice. *See Carey*, 230 F.3d at 142.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted

by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 5th day of August 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE